This is an appeal from a divorce judgment. Patricia Ann Smith and Johnny Smith, Jr., were married on September 26, 1986. One child, a daughter, was born during the marriage. The parties separated in September 1996, but the mother did not leave the marital home until December 1997. The parties had separated, with one of them filing a divorce complaint, on two other occasions before the father filed this present action.
The father filed his divorce complaint in this case on May 2, 1997. The father also sought a temporary restraining order to prevent the mother from disposing of marital assets and from harassing him and their daughter. On May 29, 1997, the trial court granted the father's motion for a temporary restraining order. On December 8, 1997, the trial court granted the father's motion for exclusive use of the marital home and ordered the mother to surrender her keys to the home.
After a trial, the court, on April 28, 1998, entered a judgment divorcing the parties and dividing the marital property. In that judgment, the court awarded custody of the parties' daughter to the father and awarded the mother standard visitation rights. The mother appeals the custody determination and the property division.
The mother argues that the trial court erred in awarding custody of the parties' minor daughter to the father.
 "`A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court's discretion is shown. To *Page 114 
substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow.'
"Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App. 1993) (citations omitted).
 "`In an action between parents seeking an initial award of custody, the parties stand on equal footing and no presumption inures to either parent. The trial court's overriding consideration is the children's best interests and welfare. The factors that enter into the court's custody determination include the child's age and sex and each parent's ability to provide for the child's educational, material, moral, and social needs. Likewise, it is proper for the court to consider the "characteristics of those seeking custody, including age, character, stability, mental and physical health . . . [and] the interpersonal relationship between each child and each parent."'
 "Graham v. Graham, 640 So.2d 963, 964 (Ala.Civ.App. 1994) (citations omitted)."
Collier v. Collier, 698 So.2d 150, 151 (Ala.Civ.App. 1997).
The parties' daughter is seven years old and is in the second grade. The record indicates that the father has been very active in her schooling and in her extracurricular activities. It is undisputed that the mother never attended any school functions or PTO meetings. The daughter's teachers testified that the child was always clean, well dressed, and well groomed. The daughter's second-grade teacher testified, "I see the results of [the father and daughter's] work at home, and in their efforts together." We note that the daughter's first-grade teacher testified that on several occasions the mother had failed to pick the child up from school and that on those occasions the teacher had telephoned the father to pick up the child.
At trial, the mother emphasized the father's extensive criminal background. The father has served time in prison for theft and robbery. He met the mother while serving time for first-degree murder; he was later pardoned for that crime. The father has not been charged with a crime since 1975. He was pardoned and released from prison in 1987, shortly after he married the mother.
The daughter testified that she wanted to live with the father. She testified that the father helped her with her schoolwork but that the mother would not. The daughter told the trial judge that she witnessed violent arguments between her parents and that the mother typically instigated the fights. She testified that while her father has had custody of her, the mother has repeatedly failed to exercise weekend visitation.
The mother testified that she did not exercise visitation for several months because she did not know that she was supposed to go to the police station to pick up the daughter. The mother denied receiving a letter sent to her attorney by the father's attorney setting forth the arrangements for transferring the daughter for visitation with the mother. The mother testified that the father refused to allow her to visit with the child.
The father testified that during one argument between the parties about whether the daughter could stay with the father, the daughter told the mother that she wanted to stay with the father. In the daughter's presence, the mother told a police officer, who had been summoned to the home, that the Department of Human Resources could take the child if the child wanted to stay with her father. The mother admitted making that statement to the police officer because the child was disobedient and the mother felt that "if DHR got her, she will mind somebody one day, because her father would not make her mind."
The record showed that both parents love the child. However, given the father's continued active involvement with the daughter's academics and extracurricular activities, and the preference of the child, we cannot say that the trial court erred in awarding custody to the father. See Graham v. Graham, supra.
The mother also argues that the trial court abused its discretion in fashioning the property division. Specifically, she argues the trial court erred in ordering that the marital home be sold and awarding her 60% of the proceeds of the sale; in awarding the father both vehicles; and in requiring her to *Page 115 
be responsible for debt on a mobile home awarded to the father.
 "No fixed standards or mathematical formulae govern the determination of alimony or the division of property. Brand v. Brand, 444 So.2d 866
(Ala.Civ.App. 1984). Instead, trial courts should consider many factors in making such awards, including the ages and health of the parties, the length of their marriage, their station in life and their future prospects, their standard of living and each party's potential for maintaining that standard after the divorce, the value and type of property they own, and the source of their common property. Matejka v. Matejka, 647 So.2d 778
(Ala.Civ.App. 1994). In appropriate cases, the trial court should also evaluate the conduct of the parties with reference to the divorce. Matejka."
Covington. v. Covington, 675 So.2d 436, 438 (Ala.Civ.App. 1996).
The parties were married for approximately 11 years. The mother works as a nurse's assistant and the father is a truck driver. The parties bought the marital home in 1992 for approximately $63,000. The mother used $17,000 from a lawsuit settlement as a down payment for the home. The parties obtained a mortgage for the remainder of the home's purchase price. The mother testified that she had paid other amounts on the mortgage; however, the father disputed that testimony. The trial court disallowed an exhibit supposedly detailing mortgage payments made by the mother, because the exhibit was confusing and the copies of checks it contained were obviously drawn from different accounts. The father testified that he made all of the mortgage payments after the parties bought the home; the mother disputed that testimony.
At the time of their separation, the parties owned a van and a Honda Accord automobile that was subject to a debt of $5,700. The Accord was originally the mother's automobile. The father testified that the mother had fallen behind on the payments for the Accord and that the bank had repossessed it. The father testified that he had brought the payments on the automobile up to date three times in an effort to preserve his credit. The father testified that he needed the automobiles to transport the daughter to school and to her extracurricular activities; he testified that he wanted the Accord because he would need a second automobile if his van broke down.
The mother initially denied that the Honda had been repossessed, but later admitted that it had been. The mother testified that she borrowed money from her sister and bought an automobile shortly after the parties separated. However, she said, just before trial the mother gave the automobile to her sister and began driving her mother's automobile. The mother testified that she wanted the Accord but that she wanted the father to pay the indebtedness on it.
Both parties alleged misconduct by the other. The mother alleged that the father beat her and mistreated the daughter. The daughter denied that the father mistreated her and testified that the father had hit her mother after the mother hit the father. The father sought the divorce on the grounds of adultery. The father alleged that the mother had had an affair in 1996 and that the parties had separated and the mother filed for divorce. The parties reconciled, however, and resumed their relationship. The father testified that he sued for a divorce in May 1997 when he determined that the mother was having an affair with another man. The mother denied having an affair with that man; she testified that the man was a "spiritual friend." The record contains a romantic card sent from the mother to the man; the mother admitted that the card is signed in her handwriting.
The trial court ordered that the parties had six months in which they could agree to allow one to purchase the other's interest in the home. The trial court ordered that if the parties could not settle the ownership, then at the end of six months the home would be placed for sale. The balance on the mortgage secured by the marital home was approximately $29,000. The mother testified that the house could be sold for $70,000 to $75,000. The percentage of the proceeds from such a sale attributable to the mother would exceed the amount of the down payment made by the mother. We note that the court ordered that the father be responsible for the mortgage payments until the sale of the home. *Page 116 
The father was awarded both motor vehicles. The record indicates that both parties testified that they provided money for the down payment for the Honda. The award of the automobiles to the father does not seem unwarranted, given the mother's history of failing to make the payments on the vehicle. We also note that the father was ordered to pay the remaining indebtedness on the vehicles.
We have examined the record and cannot say that the trial court abused its discretion in its property division. The mother essentially argues that the property division is not equal; however, we cannot say that it is inequitable, especially given the testimony regarding the conduct of the mother. See Prestwoodv. Prestwood, 523 So.2d 1071 (Ala.Civ.App. 1988). In addition to the other factors a trial court must evaluate in fashioning its property division, the conduct of the parties and fault with regard to the breakdown of the marriage are additional factors for the trial court to consider, even where the parties are divorced on the grounds of incompatibility. Huntress v. Huntress,555 So.2d 1103 (Ala.Civ.App. 1989). We cannot say that the trial court abused its discretion in its property division.
The wife argues in her brief that the trial court erred in awarding a 16'x 80' mobile home to the husband and ordering her to pay the debt secured by that mobile home. The evidence in the record indicated that the husband had sold that mobile home just after he filed his complaint for divorce. Thus, the award of that mobile home in the divorce judgment appears to he a mistake on the part of the trial court. We must reverse on this issue and remand this action for the trial court to amend its judgment accordingly. See Collier v. Collier, supra. Otherwise, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and YATES, MONROE, and CRAWLEY, JJ., concur.