YATES, Judge.
In July 1999, S.J. Ill petitioned the Juvenile Court of Montgomery County for custody of his two minor children, alleging that M.P. (the mother) and the children had resided with him from August 1998 until February 1999; that the mother had taken the children to live with their maternal grandparents in Dallas County; that he was being denied visitation with the children; and that the children were not being properly cared for by the grandparents. In August 1999, the mother petitioned for sole legal and physical custody of the children. By agreement of the parties, the court entered a temporary order, effective September 3, 1999, stating that the father “will have the minor children in his care on each Friday ... beginning at 6:30 p.m.” and “shall return the minor children each Monday morning at 8:30 a.m.;” that the mother “shall have the minor children in her care from Monday morning at 8:30 a.m. until each Friday at 6:30 p.m.;” and that neither party shall be required to pay child support. In October 1999, the court entered an order stating that the children would be in the physical custody of the father each weekend, with the exception of the third weekend of each month, and that the mother would have physical custody during all other times that the children are not with the grandparents in Dallas County.
Following an ore tenus proceeding, the court, on December 15, 1999, entered an order, stating, in part:
“1. The mother and father shall have joint legal and joint physical custody of the minor children.
“2. The minor children will be in the custody of their father for two weeks then with the mother for two weeks. After the father’s two week custodial period, the father will transport the minor children to the mother’s home and the mother will transport the minor children to the father’s home after her two weeks custodial period. The change will occur on Fridays at 6:00 p.m. The rotating custodial time shall begin on December 17,1999, and rotate as ordered herein.
[[Image here]]
“9. The mother is ordered to have separate beds for the minor children within 14 days of the date of this order. *479 If not, the custodial arrangement will not begin until such time as she has made arrangements for the separate beds and the father confirms that there are separate beds for the minor children.
“10. The mother is ordered to pay child support to the father in the amount of $75.00 per month. Said amount shall not be paid to the father for &[ months. The mother is not to pay the amount directly to the father but the father shall be given a credit for the arrearage due in [case no.] CS-99-907. The withholding order now in effect in CS-99-907 is withdrawn and no further child support is ordered to be paid by the father. At the end of the 34 month period, no child support will be paid by either party.
“11. The minor children shall not visit for more than twenty-four (24) hours at the maternal grandparents’ home in Browns, Alabama.
“12. The parties are ordered to enroll and complete a parenting class....
“13. The mother is also ordered to enroll and complete an anger management class through the Montgomery County Department of Human Resources.”
The mother filed a postjudgment motion; the court denied the motion on January 6, 2000. The mother appealed, arguing that the court erred in awarding the parties joint physical custody of the children and in failing to follow the child-support guidelines or to make a written finding regarding a deviation from the guidelines.
“When a trial court receives ore tenus evidence, the resulting judgment is presumed correct on appeal and will not be disturbed unless it is unsupported by the evidence and is, therefore, plainly and palpably wrong, or unless an abuse of the trial court’s discretion is shown.” Tribble v. Washington, 675 So.2d 468, 469 (Ala.Civ. App.1996). In an initial custody determination, the parties come to court on an equal footing and the appropriate standard for the court to apply in determining custody is the best interests of the child. Id. This court stated in Smith v. Smith, 727 So.2d 113 (Ala.Civ.App.1998):
“ ‘In an action between parents seeking an initial award of custody, the parties stand on equal footing and no presumption enures to either parent. The trial court’s overriding consideration is the children’s best interests and welfare. The factors that enter into the court’s custody determination include the child’s age and sex and each parent’s ability to provide for the child’s educational, material, moral, and social needs. Likewise, it is proper for the court to consider the “characteristics of those seeking custody, including age, character, stability, mental and physical health ... [and] the interpersonal relationship between each child and each parent.” ’ ”
Id. at 114 (citations omitted).
The two minor children were born out-of-wedlock on April 1, 1997, and September 7, 1998. The father stated that he and the mother had began dating in 1995 or 1996 and had lived together in his home from August 1998 until February 1999. He said that the mother had left after he complained about the way she had cared for the children. He stated that when he had visited the children at the grandparents’ residence, the children were in soiled diapers; that one child had bites on her arms, matted hair, and a diaper rash; and that the home was “real filthy and nasty,” with too many people living there. The father stated that the mother had told him that he would need to buy the children’s clothing and that she needed more money, although he was currently paying $487 in monthly child support. He said that he was employed with a cleaning service; that he worked the night shift; and that he had secured a babysitter who was licensed by the Department of Human Resources (“DHR”).
Marcia Parker, a DHR caseworker, testified that she had spoken with both parties after a neglect case involving the ma *480 ternal grandmother and the children had been transferred from Dallas County to Montgomery County. Parker stated that the mother had lied about the location of the children when she had been questioned by an investigator who visited the grandmother’s home. Parker also stated that the mother had “hung up” on her during a telephone conversation in which she had questioned the mother about an incident where the mother had told the babysitter that she wanted to “come by and check on” the children at 11:80 p.m.
Home evaluations were completed on both parties by Audrey Thomas, a DHR caseworker. Thomas reported that the mother had been residing with her uncle in a two-bedroom apartment in Montgomery and sharing her bed with the two children; that the children still had been living primarily with the grandmother in Dallas County; that the mother did not want the children with the father; and that the mother had stated that no one could tell her what to do with her children. The report also stated that the father resided in a three-bedroom apartment in Montgomery; that he was gainfully employed as a janitorial aide; and that he earned between $1,200 and $1,900 per month. At the hearing, Thomas reiterated that she did not have a recommendation regarding which parent should be awarded custody of the children; rather, she said, she would “rely on the wisdom of the court” to determine the most appropriate placement.
Martha Smith, the father’s babysitter, testified that she was a licensed day-care provider and that she had agreed to keep the children at night and on the weekends for $125 every two weeks. Smith stated that the father had “a decent home” and that she considered him to be a good father.
The maternal grandmother, F.P., testified that the children often stayed with her and she denied that the children had been kept from the father. She stated that she had reared seven children without any problems; that she was currently babysitting three grandchildren, while three of her children remained in the home; and that the two children at issue had not been neglected.
The mother testified that the children had been living primarily with her in Montgomery, although they had stayed with the grandmother in Dallas County; that her uncle/housemate assists her with child care until she returns home from work; and that she has a back-up babysitter. The mother stated that her only concern with the current custody arrangement was that she did not like going to the father’s home to drop off the children, because of the animosity between the parties.
After thoroughly reviewing the record, we conclude that the court did not abuse its discretion in awarding the parties joint legal and physical custody of the children. There is no evidence to support a determination that it is not in the best interests of the children to reside with both parties. Accordingly, we affirm that portion of the judgment awarding the parties joint legal and joint physical custody.
As to the issue of child support, this court has consistently held that the application of Rule 32, Ala. R. Jud. Admin., child-support guidelines is mandatory in child-support actions filed on or after October 9, 1989. State ex rel. Dep’t of Human Resources v. Hogg, 689 So.2d 131 (Ala. Civ. App.1996). A trial court may deviate from the child-support guidelines in determining a child-support amount; however, any deviation is improper if it is not justified in writing. In Martin v. Martin, 637 So.2d 901, 902 (Ala.Civ.App.1994), this court issued the following directive:
“We hold, therefore, that the word ‘shall’ in Rule 32(E), Ala. R. Jud. Admin., mandates the filing of a standardized Child Support Guidelines Form and a Child Support Obligation Income Statement/Affidavit Form.”
This court cannot discern how the trial court determined the mother’s support ob *481 ligation of $75 per month. That portion of the judgment regarding the mother’s current child-support obligation is reversed and the case is remanded for the trial court to obtain completed and signed CS-41 and CS-42 Child Support forms, as required by Rule 32(E), Ala. R. Jud. Admin. See State ex rel. Dunnavant v. Dun-navant, 668 So.2d 851 (Ala.Civ.App.1995). We note that the record contains evidence that would support a determination that compliance with the child-support guidelines may be unjust or inequitable. If the court determines that application of the guidelines is manifestly unjust or inequitable, and then deviates from the guidelines in setting a support obligation, it must make the findings required by Rule 32(A)(ii). Hogg, supra; Knight v. Knight, 739 So.2d 507 (Ala.Civ.App.1999).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.