975 So.2d 359 (2007)
Todd Irvin BRATTMILLER
v.
Susan Beth BRATTMILLER
Susan Beth Brattmiller
v.
Todd Irvin Brattmiller.
2050120.
Court of Civil Appeals of Alabama.
June 1, 2007.
*360 Robert H. Brogden, Ozark, for appellant/cross-appellee Todd Irvin Brattmiller.
J.E. Sawyer, Jr., Enterprise, for appellee/cross-appellant Susan Beth Brattmiller.
*361 PER CURIAM.
Todd Irvin Brattmiller ("the husband") appeals from a divorce judgment that, among other things, awarded Susan Beth Brattmiller ("the wife") a portion of his military retirement benefits. The wife cross-appeals and asserts that the trial court erred in awarding the husband primary physical custody of the parties' two minor children.
The parties were married on December 27, 1986, one month after the husband had entered military service in the United States Army. Two daughters were born to the parties, one in 1989 and one in 1991. Throughout the marriage, the husband had advanced in his Army career by attending officer-candidate school and, eventually, by being commissioned as an officer in May 1995. At the time of trial, the husband was classified as a captain and would be eligible to retire in November 2006.
In July 2003, the husband filed a complaint seeking a divorce on the grounds of incompatibility and an irretrievable breakdown of the marriage; in that complaint, among other things, the husband sought primary custody of the parties' two minor children. The wife filed an answer contesting that the husband should be awarded physical custody of the children and a counterclaim seeking, among other things, a divorce and an award of custody of the children.
Following numerous delays, the trial court conducted an ore tenus proceeding on February 22, 2005. During that proceeding, both of the parties and the parties' two daughters testified. The vast majority of the evidence adduced at trial related to the child-custody dispute between the parties. The wife asserted that she had been the children's primary caregiver because, she said, the husband had been too busy pursuing his military career. However, the evidence indicates that at different times during the marriage the wife had abused alcohol; the evidence also established that the wife had completed a rehabilitation program and had been alcohol-free since August 2003.
The husband testified that the wife had been a hindrance to his career and that he did not want the parties' children to be subjected to any possible renewed abuse of alcohol by the wife in the future. The parties' older daughter, who was 15 years old at the time of trial, testified that during the period when the husband had been overseas on assignment, the wife had been verbally abusive to the children while she was drunk. The older daughter testified that the wife's drinking habits had strained the mother-child relationship and that she would prefer to live with the husband. The parties' younger daughter, who was 13 years old at the time of trial, testified that she loved both of her parents but that she wanted to live with the wife; she also stated her belief that, by living with the wife, her presence would help deter the wife from abusing alcohol in the future. In addition, the younger daughter noted that she did not "get along" with her older sister.
The husband testified that the wife had not been of any assistance with respect to his Army career and opined that she was not entitled to an award of any portion of his military retirement benefits for that reason. He also insisted that he was the more stable parent of the two parties, that he could ensure that he would continue to be stationed in Alabama until his retirement in November 2006, and that he should therefore be awarded custody of the parties' minor children.
The trial court entered a divorce judgment on July 7, 2005. That judgment awarded the husband primary physical custody of both children, awarded the wife *362 standard visitation with the children, and ordered the wife to pay monthly child support in the amount of $284. The judgment awarded the marital residence and its contents to the husband, provided that the husband pay the wife 50% of the equity in the marital residence within 60 days of the entry of the judgment; otherwise, the husband was charged with selling the property and sharing equally with the wife any proceeds remaining after all related costs had been paid.
As part of the marital-property division, the judgment ordered the husband to pay the wife $500 per month in periodic alimony for 60 consecutive months. In addition, the judgment ordered the husband to pay the wife 45% of "his military retirement [benefits] when the [husband] retires and begins receiving his retirement pay."
The husband filed a postjudgment motion challenging the award of military retirement benefits, and the wife filed a postjudgment motion challenging the child-custody award. Both motions were denied by operation of law. See Rule 59.1, Ala. R. Civ. P.
The husband contends that the trial court erred in awarding the wife a portion of his retirement benefits because the wife failed to introduce any evidence tending to establish the present value of those benefits. As a general matter, a trial court, as a component of a divorce judgment, may order an allowance to one spouse out of the other spouse's estate when such an award is warranted. See Ala.Code 1975, § 30-2-51(a). In contrast, Ala.Code 1975, § 30-2-51(b), which was added in 1995 and upon which the husband bases his argument, authorizes a court granting a divorce to apportion as a marital asset "the present value of any future or current retirement benefits [ ] that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed" (emphasis added).[1]
In Wilson v. Wilson, 941 So.2d 967 (Ala.Civ.App.2005); Applegate v. Applegate, 863 So.2d 1123 (Ala.Civ.App.2003); and McAlpine v. McAlpine, 865 So.2d 438, 440 (Ala.Civ.App.2002), this court held that, in order to support an award to one spouse of a portion of the other spouse's retirement benefits pursuant to § 30-2-51(b), the spouse seeking such an award must introduce evidence establishing the "present value" of the retirement benefits. Moreover, this court stated that "'[t]he failure to present the necessary evidence of the present valuation of retirement benefits . . . prevents the trial court from exercising its . . . discretion to award one spouse any portion of the retirement benefits of the other spouse. McAlpine v. McAlpine, 865 So.2d 438 (Ala.Civ.App. 2002).'" Wilson, 941 So.2d at 970 (quoting Applegate, 863 So.2d at 1124). Reversing the awards of retirement benefits in Wilson, Applegate, and McAlpine, this court remanded those cases with instructions for the pertinent trial courts to amend their judgments to eliminate the awards of retirement benefits and to reconsider divisions of marital assets on the basis of *363 evidence that had already been introduced at trial.
Accordingly, in the case now before us, the award to the wife of a portion of the husband's retirement benefits was erroneous because the wife did not introduce any evidence establishing the present value of the husband's retirement benefits. We therefore reverse the trial court's judgment insofar as it awarded the wife a portion of the husband's retirement benefits and remand the case with instructions to the trial court to amend the judgment to eliminate the award to the wife of a portion of the husband's retirement benefits. See Wilson, Applegate, and McAlpine. In addition, because the award to the wife of a portion of the husband's retirement benefits was a significant part of the trial court's allocation of marital property to the wife, we reverse the trial court's division of the marital property in its entirety so that, on remand, the trial court can reconsider its division of the marital property in light of our holding that it cannot award the wife any portion of the husband's retirement benefits. Moreover, because the award of periodic alimony is interrelated with the division of marital property, see Courtright v. Courtright, 757 So.2d 453, 456 (Ala.Civ.App.2000), we also reverse the trial court's award of periodic alimony, so that, on remand, the trial court can reconsider its award of periodic alimony in conjunction with its reconsideration of its division of marital property.
The wife's cross-appeal challenges the trial court's award of primary physical custody of the parties' two children to the husband because, she claims, the evidence did not establish that she was unfit to have custody of the children. The wife misconstrues the proper standard to be applied in this case; in an original divorce action, the parties stand on an equal footing and no presumption of entitlement to custody inures to either parent. See Smith v. Smith, 727 So.2d 113, 114 (Ala.Civ.App.1998). The trial court's paramount concern, and the correct standard for it to apply in making an initial child-custody determination, is the best interests and welfare of the children at issue. See Ex parte Couch, 521 So.2d 987, 989 (Ala. 1988); see also C.B.B. v. J.S.D., 831 So.2d 620, 621 (Ala.Civ.App.2002).
In this case, the trial court received evidence during an ore tenus proceeding concerning the custody issue; thus, our review of that award is limited. The ore tenus rule, under which we indulge a presumption of correctness in reviewing a trial court's judgment after receiving oral testimony, is based, in part, on the unique position of the trial court to personally observe the parties and witnesses and to assess their demeanor and credibility. Ex parte Fann, 810 So.2d 631, 633 (Ala.2001). Additionally, "'[i]n child custody cases especially, the perception of an attentive trial judge is of great importance.'" Id. at 633 (quoting Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ. App.1981)). In this case, although the trial court did not state any factual findings before awarding physical custody of the children to the husband, there was substantial evidence in the record from which that court could have found that the best interests of the children would be best served by making the custody award it made.
Moreover, "[a]ppellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing." Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996). This court is not permitted to reweigh the evidence on appeal or to substitute its judgment for that of the trial court. See Ex parte Patronas, 693 So.2d 473, 475 (Ala.1997). Additionally, "`in the absence *364 of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment.'" Ex parte Fann, 810 So.2d at 633 (quoting Ex parte Bryowsky, 676 So.2d at 1324). We must, therefore, defer to the child-custody decision reached by the trial court.
The divorce judgment is due to be affirmed as to the custody determination. However, as noted earlier, the trial court's retirement-benefits award is erroneous. We reverse the trial court's alimony award and its division of marital property in their entirety so that, on remand, the trial court may make a new alimony award and marital-property division in light of the impropriety of awarding the wife a portion of the husband's retirement benefits in this case.
APPEAL  REVERSED AND REMANDED WITH INSTRUCTIONS.
CROSS-APPEAL  AFFIRMED.
THOMPSON, P.J., and BRYAN and THOMAS, JJ., concur.
MOORE, J., concurs specially.
PITTMAN, J., concurs in part and dissents in part, with writing.
MOORE, Judge, concurring specially.
I fully concur in the discussion in the lead opinion regarding the trial court's disposition of the custody issue. I also concur in the determination in the lead opinion that the trial court erred in its alimony and property-division awards by awarding the wife a portion of the husband's military retirement benefits. I write specially to address this latter issue and the arguments raised in Judge Pittman's special writing.
In Kabaci v. Kabaci, 373 So.2d 1144 (Ala.Civ.App.1979), this court decided that military pension benefits could be used as a source to pay periodic alimony but could not be awarded as alimony in gross or divided in a property settlement. In Ex parte Vaughn, 634 So.2d 533 (Ala.1993), the supreme court overruled Kabaci by holding that disposable military pension benefits could be treated as marital property subject to equitable division pursuant to the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408.
In Jackson v. Jackson, 656 So.2d 875, 877 (Ala.Civ.App.1995), this court arguably extended Vaughn in holding that military nondisability pension benefits that had not yet vested and matured constituted a marital asset subject to division upon dissolution of the marriage. See also Welch v. Welch, 636 So.2d 464 (Ala.Civ.App.1994) (extending Vaughn to hold that non-military retirement accounts may be the subject of alimony in gross or property division). In so doing, this court noted that
"retirement benefits can be mathematically ascertained. Courts have developed formulas for valuation of nonvested military retirement pay, for example, awarding ownership based on the number of months the marriage lasted, divided by the total number of months of military service that can be counted toward retirement. See Carranza v. Carranza, 765 S.W.2d 32 (Ky.App.1989). Another formula sets an amount to be paid in monthly installments, based on the number of years of the marriage, divided by the number of years in military service, times one-half the retirement pay when retirement occurs. See Bullock v. Bullock, 354 N.W.2d 904 (N.D.1984). Using this latter formula, a court can award each spouse an appropriate portion of each retirement payment as it is paid, without computing the present value of the retirement and with each person equally dividing the risk if the pension fails to vest."
656 So.2d at 877-78.
In 1995, four months after Jackson was decided, the legislature amended Ala.Code *365 1975, § 30-2-51, to regulate the division of retirement benefits in divorce cases. Section 30-2-51 now provides:
"(a) If either spouse has no separate estate or if it is insufficient for the maintenance of a spouse, the judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse's family. Notwithstanding the foregoing, the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the evidence that the property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage.
"(b) The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed, provided that the following conditions are met:
"(1) The parties have been married for a period of 10 years during which the retirement was being accumulated.
"(2) The court shall not include in the estate the value of any retirement benefits acquired prior to the marriage including any interest or appreciation of the benefits.
"(3) The total amount of the retirement benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court.
"(c) If the court finds in its discretion that any of the covered spouse's retirement benefits should be distributed to the non-covered spouse, the amount is not payable to the non-covered spouse until the covered spouse begins to receive his or her retirement benefits or reaches the age of 65 years, unless both parties agree to a lump sum settlement of the non-covered spouse's benefits payable in one or more installments."
The 1995 amendment to § 30-2-51 made stylistic changes to the wording of subsection (a) and added subsections (b) and (c).
Subsection (b) provides that the judge in a divorce proceeding may include in the estate of either spouse "the present value" of vested retirement benefits. Subsection (b)(2) further provides that the judge may not include in the estate "the value" of retirement benefits acquired before the marriage or any interest or appreciation thereon. Subsection (b)(3) provides that the total "amount" of the benefits payable to the noncovered spouse shall not exceed 50% of the retirement benefits that may be considered by the court. Finally, subsection (c) provides that in the absence of an agreement by the parties to pay the noncovered spouse's portion in one or more installments, the retirement benefits shall be payable when the covered spouse begins receiving the retirement benefits or when the covered spouse reaches age 65. These amendments became effective on January 1, 1996. See Ala. Acts 1995, Act No. 95-549, § 3.
In McAlpine v. McAlpine, 865 So.2d 438 (Ala.Civ.App.2002), this court reversed a judgment awarding a percentage of retirement benefits on the ground that the percentage related to the future, not the present, value of the benefits in violation of § 30-2-51(b). The court held that the noncovered spouse had failed to present sufficient evidence of the present value of the benefits that had accumulated during the marriage. The court noted that valuation of retirement benefits can be a difficult task that may require expert testimony *366 from a certified public accountant or an actuary. 865 So.2d at 441 n. 1 (citing Joy M. Frieberg, Sizing Up the Pension Pot, 24 Fam. Advoc. 12 (Fall 2001)). Nevertheless, the court held that a trial court could not award the noncovered spouse any portion of the covered spouse's retirement benefits absent evidence of valuation. See also Walker v. Walker, 695 So.2d 58 (Ala.Civ.App.1997) (holding, in the first case to consider the effect of § 30-2-51(b), that, in the absence of any evidence of the present value of a covered spouse's future retirement benefits and any evidence that the covered spouse had a vested interest in those future retirement benefits, a trial judge did not abuse its discretion in failing to award the noncovered spouse a portion of the retirement benefits).
Since McAlpine was decided, at least two judges on this court have argued that the statute should not be construed to require evidence of the present value of retirement benefits accumulated during the marriage. In a special concurrence in Wilkinson v. Wilkinson, 905 So.2d 1, 3-6 (Ala.Civ.App.2004) (Murdock, J., concurring specially), and in Wilson v. Wilson, 941 So.2d 967, 971-73 (Ala.Civ.App.2005) (Murdock, J., concurring in the judgment of reversal only), Judge Murdock expressed his belief that the ambiguous language of § 30-2-51(b) and the impracticality of requiring parties to present, and requiring trial courts to evaluate, complex and technical expert evidence warranted a conclusion that in some cases a trial court may simply award a percentage of the retirement benefits attributable to the marital period and leave it to the retirement-plan administrator to calculate the specific amount due when the retirement benefits become payable. Judge Murdock cautioned, however, that a trial court might still be required to determine the present value of the retirement benefits in other cases to assure an equitable distribution of property. Wilkinson, 905 So.2d at 6 (Murdock, J., concurring specially).
In another special writing in Wilkinson, supra, Presiding Judge Yates noted the difficulty in determining the present value of retirement benefits, particularly in cases involving defined-benefit plans that use variables such as age, length of service, and wage levels to determine the amount of a retirement benefit. 905 So.2d at 10 (Yates, P.J., concurring in the result). Furthermore, Presiding Judge Yates also pointed out that many assumptions have to be made regarding job tenure, life expectancy, and wage fluctuations. 905 So.2d at 14. Presiding Judge Yates argued that the statutory language did not require a present-value calculation and that a trial court could award a noncovered spouse a percentage of a covered spouse's retirement benefits accumulated during the marriage. 905 So.2d at 14-16.
Despite these objections, since McAlpine was decided this court has consistently held that a trial court has no discretion to award any portion of a covered spouse's retirement benefits in the absence of evidence of the present value of the retirement benefits accumulated during the marriage. See Applegate v. Applegate, 863 So.2d 1123 (Ala.Civ.App.2003); Langley v. Langley, 895 So.2d 971 (Ala.Civ.App.2003); Dunn v. Dunn, 891 So.2d 891 (Ala.Civ. App.2004); Wilson v. Wilson, supra; and Capone v. Capone, 962 So.2d 835 (Ala.Civ. App.2006).
I agree with Presiding Judge Crawley's statement in Wilson, supra, that the statute unambiguously requires evidence of the present value of future retirement benefits in cases in which the trial judge exercises his or her discretion to include retirement benefits in a property division. 941 So.2d at 971 (Crawley, P.J., concurring in the result). The statute plainly states that *367 the judge "may include in the estate of either spouse the present value of any future . . . retirement benefits. . . ." § 30-2-51(b). Obviously, a judge may only include the present value of future retirement benefits in the estate of a spouse based on evidence establishing that value. As the party seeking a portion of the benefits, it necessarily follows that the noncovered spouse bears the burden of proving the present value. If the noncovered spouse fails to discharge this burden, the trial court may not award any portion of the retirement benefits to the noncovered spouse. Given the clear language employed and the consistent application of the statute since its enactment, I find no compelling reason to reconsider the construction this court has placed on the statute.
I recognize the difficulty and expense of pinpointing the exact present value of future retirement benefits under some pension plans. Indeed, many state courts have adopted methods of property division that obviate the need for reducing future retirement benefits to present value. See Brett R. Turner, Equitable Distribution of Property § 6.11 (2d ed.1994) (cited in Wilkinson, 905 So.2d at 11-15 (Yates, P.J., concurring in the result)). Some of those states have adopted the "deferred-distribution" method by which a trial court simply determines the formula for calculating the amount to be distributed to the parties when retirement benefits become available in the future. See Wilkinson, 905 So.2d at 12 (quoting Pulliam v. Pulliam, 796 P.2d 623, 626 (Okla.1990)). Using that method, a form of which Judge Murdock and Presiding Judge Yates advocated in their special writings in Wilkinson, and which Judge Pittman advocates today in his special writing, in which he dissents in part, there is no need for calculating the present value of future retirement benefits, see Wilkinson, 905 So.2d at 15 (Yates, P.J., concurring in the result), thus avoiding all the impracticalities associated with producing and presenting evidence bearing on the issue.
Before the amendment of § 30-2-51, this court would have been free to follow other state courts and adopt the "deferred-distribution" method of dividing future retirement benefits. However, our legislature has now directed the manner in which future retirement benefits must be divided, which includes a preliminary determination of the present value of future retirement benefits accumulated during the marital period. This court may not override the unambiguous language of the statute based on its own particular view of the wisdom or fairness of the statute. Ivey v. State, 821 So.2d 937 (Ala.2001).
With that said, although the statute clearly requires a present-value calculation, the statute does not mandate any particular method for making that calculation. Caselaw from other jurisdictions evidences two major approaches  the actuarial method and the new Pension Benefit Guaranty Corporation ("PBGC") method. See Dylan A. Wilde, Obtaining an Equitable Distribution of Retirement Plans in a Divorce Proceeding, 49 S.D.L.Rev. 141, 152-53 (2003). Under the actuarial method,
"an estimate of the accrued benefits must be determined along with the amount and frequency of each potential periodic payment. The present value of each of these periodic payments must then be calculated for taking into consideration discounting factors for interest, mortality, and vesting. The present value of each periodic payment is then added together to determine the present value of the retirement plan. Generally, this present value calculation must be established through expert testimony."
*368 49 S.D.L.Rev. at 152-53 (footnotes omitted). See also In re Marriage of Harrison, 13 Kan.App.2d 313, 769 P.2d 678, 680 (1989). Under the newer and more popular PBGC method,
"the present value of all possible future payments must be calculated by using the mortality and interest rates found in a quarterly survey conducted by annuity writing insurance companies. The present values of each possible payment are added together with the expenses incurred by the plan administrator, called loading expenses. This method is more popular because the interest rates used provide a more accurate reflection of the rates used in the financial market. Therefore, the replacement cost of the annuities that will be needed to fund the future benefit payments are easier to ascertain. This helps reduce the speculation involved in the present value calculation."
49 S.D.L.Rev. at 153 (footnotes omitted); see also 3 William M. Troyan et al., Valuation & Distribution of Marital Property § 45.23 (1987); Bishop v. Bishop, 113 N.C.App. 725, 440 S.E.2d 591 (1994) (detailing five steps in PBGC method). Some companies issue pension valuation reports using the PBGC method for minimal cost. See Wiggins v. Walsh, (No. HA 671-2, July 29, 1991) (Va.Cir.Ct.1991) (not reported) (noting "LAWData, Inc." offered to appraise pension benefits for $100).
In McAlpine and its progeny, the party who sought a division of the retirement benefits failed to present any evidence of the present value of those benefits. Members of this court have expressed a belief that this failure emanates from the mathematical difficulty and undue expense involved in calculating the present value of retirement benefits and presenting evidence of that present value through expert testimony. However, the preceding brief discussion illustrates that those concerns may have been overstated. It appears that the experience of other jurisdictions has yielded simple and inexpensive methods for determining the present value of even defined-benefit pension plans. Those methods of valuation do not conflict with the plain language of § 30-2-51, and, in an appropriate case, I would endorse either method as a valid way to determine present value.
In this particular case, the wife made no attempt to present any evidence of the present value of the retirement benefits accumulated during the marriage despite notice that her failure to do so would result in a denial of any portion of those retirement benefits. Based on the fact that she had available to her simple and inexpensive means to prove present value that conform to the terms of the statute, I cannot agree with the implication in Judge Pittman's special writing that it would be inequitable to the wife, or any other spouse seeking division of retirement benefits, to continue to apply the statute in accordance with its plain terms. Therefore, I concur in the decision to reverse the alimony and property-division awards.
PITTMAN, Judge, concurring in part and dissenting in part.
I concur to affirm the trial court's custody award.
As I have noted previously, the valuation of retirement benefits in divorce cases has become a contentious problem for our courts. See Capone v. Capone, 962 So.2d 835, 842 (Ala.Civ.App.2006) (Pittman, J., concurring in part and dissenting in part). The main opinion holds that that portion of the judgment awarding the wife 45% of the husband's future military retirement benefits must be reversed and that the trial court may not, on remand, award any of those benefits to the wife.
*369 This court has been grappling with subsection (b) of § 30-2-51, Ala.Code 1975, ever since its enactment by the Alabama Legislature in 1995. The statute authorizes a court granting a divorce to apportion as a marital asset "the present value of any future or current retirement benefits [ ] that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed." Ala.Code 1975, § 30-2-51(b). The trial court's discretion to make this type of award is limited by three additional conditions contained in the statute: the parties must have been married for 10 years, the award must reflect only benefits acquired during the marriage, and the award must not exceed 50% of the total amount of divisible benefits.
That statutory authorization works reasonably well when dividing individual retirement accounts or other tax-deferred retirement accounts, such as retirement plans authorized pursuant to 26 U.S.C. § 401(k), because those accounts typically contain a definite sum of money that can be divided at the time the judgment is entered. However, the difficulty in applying § 30-2-51(b) is readily apparent any time a trial court must attempt to divide a vested interest in a future benefit stemming from a defined-benefit or a defined-contribution retirement plan between divorcing parties. See generally Wilson v. Wilson, 941 So.2d 967 (Ala.Civ.App.2005); Wilkinson v. Wilkinson, 905 So.2d 1 (Ala. Civ.App.2004); Applegate v. Applegate, 863 So.2d 1123 (Ala.Civ.App.2003); and McAlpine v. McAlpine, 865 So.2d 438 (Ala. Civ.App.2002).
Upon reflection, I have reconsidered my votes to concur in Wilson, Wilkinson, Applegate, and McAlpine, supra. Those decisions, in my view, placed an undue emphasis on requiring proof of the "present value" of the particular retirement benefits at issue. I find no language in the statute expressly requiring the calculation of the present value of an award of retirement benefits; the pertinent statutory requirement is that the award be premised upon retirement moneys acquired during the marriage. The problem with our cases requiring a "present value" calculation is that the value of a participant's assets in, or a participant's future income from, a defined-benefit or defined-contribution retirement plan cannot always be easily reduced to a sum certain at the time the divorce complaint is filed. At best, rough estimates can be mathematically derived based upon evidence of a participant's present salary and from retirement projections based upon assumptions regarding continued payment of that salary using the compensation tables  if any exist  of the particular retirement plan. At worst, a trial court's calculations could require hours of actuarial and accounting testimony in order to support the equity of a potential retirement-benefits division.
I believe the intent of the legislature was clear when it created the conditions under which vested retirement benefits could be divided between divorcing parties as a marital asset.[2] In my view, if the conditions contained in § 30-2-51(b) have been satisfied, a trial court may, in its discretion, award a specific percentage of vested retirement benefits that have been accumulated during the parties' marriage. The retirement-plan administrator may then be left to make the necessary calculations as to what specific amount is to be sent to the noncovered spouse at the time that the spouse enrolled in the plan actually begins to draw benefits.
*370 In my view, the trial court received sufficient evidence to support an award to the wife of a portion of the husband's retirement benefits. Rather than reversing that award and instructing the trial court to award those benefits to the husband, I would reverse the award, remand the action only for a determination of benefits acquired during the marriage, and direct an award to the wife of not more than 50% of those benefits. To the extent that the main opinion does not allow the wife any portion of the husband's retirement benefits because of her failure to adduce evidence at trial of the "present value" of those benefits, I respectfully dissent.
NOTES
[1] In this case, the record indicates that the husband had served in the military for 16 years and 8 months at the time he filed his divorce complaint. Commissioned officers vest in an Army retirement only after completing 20 years of service. See 10 U.S.C. § 3911. Although the wife provided evidence indicating that the parties had been married from December 1986 until the time of trial in February 2005, the evidence indicates that the husband did not have a vested military retirement even by the time of trial. However, because the husband has not contended that his future retirement benefits are not divisible on the basis that they are not "vested" under § 30-2-51(b), we do not address the divisibility of those benefits.
[2] Like the main opinion, I do not reach the question whether § 30-2-51 permits division of nonvested benefits.