865 So.2d 438 (2002)
Carnell McALPINE
v.
Jessue Brown McALPINE.
2010352.
Court of Civil Appeals of Alabama.
November 15, 2002.
Rehearing Denied February 7, 2003.
Certiorari Denied May 16, 2003.
*439 J. Cliff Heard of Benkwith & Heard, P.C., Montgomery, for appellant.
Pam Gooden Cook, Montgomery, for appellee.
Alabama Supreme Court 1020879.
PER CURIAM.
On December 10, 2001, the trial court divorced Carnell McAlpine ("the husband") and Jessue Brown McAlpine ("the wife"). The husband appeals from the trial court's award of a portion of his monthly retirement benefits and periodic alimony to the wife, and its order that he provide the parties' minor son a vehicle and that he pay three-fourths of the son's college expenses. We affirm in part, reverse in part, and remand.

I. Retirement Benefits

The husband first argues that the trial court's award of a portion of his retirement benefits to the wife was erroneous because, he says, (1) it includes benefits that accrued before the parties' marriage and that will accrue after their divorce; and (2) the wife failed to introduce sufficient evidence to support an award of retirement benefits under § 30-2-51(b), Ala.Code 1975.
When the husband filed his petition for divorce on March 2, 2001, he was a federalgovernment employee. He had been a federal employee since March 1977, before the parties married in December 1977. During the nine years before the husband filed his petition for divorce, his yearly salary had approximately doubled. At trial, the wife's counsel offered a document, which was admitted over the objection of the husband's counsel, showing that as of January 14, 2001, the husband's estimated retirement benefit, if he retired at age 55, was $3,417 per month; at the time of trial, the husband was 47. The amount the husband is eligible to receive as a monthly retirement benefit is calculated by using his highest salary for three consecutive years.
The trial court initially entered a final divorce judgment on October 3, 2001; however, on December 6, 2001, after conducting a hearing on the parties' postjudgment *440 motions, it entered an order that amended certain portions of the judgment. The trial court's amended order, as it related to the husband's retirement benefits, stated:
"17. The Wife has a current retirement through the school system, with the present value being approximately $27,701.00. The Husband has a retirement fund presently worth approximately $66,000.00; which leaves the Husband with $38,000.00 more than the Wife has currently in retirement. The Husband, Carnell McAlpine, will be eligible for retirement benefits under the Civil Service Retirement System based on employment with the United States Government. The Wife, Jessue Brown McAlpine, is entitled to twenty-one (21%) percent of Carnell McAlpine's gross monthly annuity under the Civil Service Retirement System. The United States Office of Personnel Management is directed to pay the Wife's share directly to Jessue Brown McAlpine."
Section 30-2-51(b), Ala.Code 1975, which governs the award of retirement benefits, states:
"(b) The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed, provided that the following conditions are met:
"(1) The parties have been married for a period of 10 years during which the retirement was being accumulated.
"(2) The court shall not include in the estate the value of any retirement benefits acquired prior to the marriage including any interest or appreciation of the benefits.
"(3) The total amount of the retirement benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court."
In construing this section, this court has stated:
"A reading of § 30-2-51(b) indicates that a trial judge has the discretion to divide a spouse's retirement benefits if either of two conditions exists at the time the complaint for divorce is filed: a spouse must have a vested interest in or be receiving retirement benefits. Section 30-2-51(b) then states that the trial judge's discretion to divide retirement benefits is further limited by three additional conditions: the 10-year marriage rule of subsection (1); the post-nuptial acquisition-of-benefits rule of subsection (2); and the 50-percent division rule of subsection (3). The apparent meaning of these provisions, when read as a whole, is that the trial judge may divide the value of any retirement benefits in which one spouse has a vested interest or is receiving on the date the action for divorce is filed, provided that the parties have been married for ten years as of that date, that the judge divides only those retirement benefits acquired during the marriage, and that the judge awards the noncovered spouse no more than 50 percent of the benefits that may be considered by the court."
Smith v. Smith, 836 So.2d 893, 899-900 (Ala.Civ.App.2002).
From our review of the record, we cannot determine the method by which the trial court made its calculation in awarding the wife 21 percent of the husband's retirement benefits and whether that award would necessarily comply with § 30-2-51(b). In any event, the trial court's order awards the wife a percentage of the future value of the husband's retirement benefits, *441 not its present value, which violates § 30-2-51(b). Furthermore, the wife failed to present sufficient evidence to support an award of any portion of the husband's retirement benefits.[1] The $66,000 figure listed in the trial court's order was not represented at trial to be the present value of the husband's retirement, but was rather the amount he had contributed to his retirement plan during the course of his employment with the federal government. The husband's retirement benefit was not to be based upon his contributions, but based upon his highest salary received for three consecutive years. The wife also failed to offer any evidence to show what portion of his retirement earnings the husband had earned before the parties' marriage. Accordingly, the trial court had no discretion to award any portion of the husband's retirement benefits to the wife. Its judgment is due to be reversed and this cause is remanded for the trial court to amend its judgment so as to not award the wife any portion of the husband's retirement benefits.

II. Alimony

The husband next argues that the trial court erred in awarding periodic alimony to the wife because (1) the wife did not establish a need for support, and (2) the periodic alimony awarded is beyond the husband's ability to pay. Our supreme court has observed:
"The standard appellate courts apply in reviewing a trial court's judgment awarding alimony and dividing property is well established:
"`A trial court's determination as to alimony and the division of property following an ore tenus presentation of the evidence is presumed correct. Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App.1993). Moreover, issues of alimony and property division must be considered together, and the trial court's judgment will not be disturbed absent a finding that it is unsupported by the evidence so as to amount to an abuse of discretion. Id.'

"Morgan v. Morgan, 686 So.2d 308, 310 (Ala.Civ.App.1996). More recently, the Court of Civil Appeals has stated:
"`The trial court has wide discretion over alimony and the division of property, and it may use whatever means are reasonable and necessary to equitably divide the parties' property. Grimsley v. Grimsley, 545 So.2d 75, 77 (Ala.Civ.App.1989). Its judgment is presumed correct and will not be reversed unless it is so unsupported by the evidence ... as to be unjustly and palpably wrong. Grimsley, 545 So.2d at 76. However, that judgment is subject to review and revision. Moody v. Moody, 641 So.2d 818, 820 (Ala.Civ.App.1994). This court must consider the issues of property division and alimony together when reviewing the decision of the trial court, Albertson v. Albertson, 678 So.2d 118, 120 (Ala.Civ.App.1996), and, because the facts and circumstances of each divorce are different, this court must also consider the particular facts and circumstances of the case being reviewed. Murphy v. Murphy, 624 So.2d 620, 623 (Ala.Civ.App.1993).'

"Bushnell v. Bushnell, 713 So.2d 962, 964-65 (Ala.Civ.App.1997)."
Ex parte Drummond, 785 So.2d 358, 360-61 (Ala.2000).
*442 The trial court ordered the husband to pay the wife $500 each month in alimony, to be increased to $750 a month once the parties' minor son reached the age of majority. However, we cannot review the trial court's periodic-alimony award because we have determined that the trial court's judgment must be reversed and the case remanded based upon the trial court's improper award of retirement benefits to the wife and because we must consider matters of property division and alimony together. Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App.1993), and Albertson v. Albertson, 678 So.2d 118 (Ala. Civ.App.1996). Thus, on remand the trial court will have the opportunity to reconsider its award of periodic alimony or its division of property based upon the wife's having failed to present sufficient evidence to support awarding her a portion of the husband's retirement benefits. See DuBois v. DuBois, 714 So.2d 308 (Ala.Civ.App.1998)(after reversing a trial court's award of retirement benefits, this court was unable to review the trial court's division of property or its failure to award periodic alimony for an abuse of discretion, and on remand the trial court was ordered to consider the entire judgment in making an equitable division).

III. Vehicle and College Expenses for the Minor Son

The husband argues that the trial court erred in ordering him to provide a vehicle for the parties' minor son and in ordering him to pay three-fourths of the son's college expenses. Further, in regard to the husband's providing a vehicle to the son, the trial court stated in its amended order "that the Husband [was] not legally obligated to furnish insurance on the vehicle," which the husband argues is contrary to the Alabama Mandatory Liability Insurance Act, § 32-7A-1 et seq., Ala.Code 1975.
At trial it was established that the minor son had the use of a 1993 Honda Civic automobile that was titled in the husband's name. The husband testified that he sought to have the title to the vehicle transferred to the wife and to have the wife pay the insurance on the vehicle; however, at a later point, he stated that he didn't mind paying the insurance so long as the vehicle was titled to an adult. The husband never objected to the minor son's continued use of the vehicle. Accordingly, we affirm the trial court's order insofar as it requires the husband to maintain title to the vehicle and to provide the vehicle to the minor son. However, the trial court's statement that the husband is not legally obligated to pay the insurance on that vehicle is contrary to the Alabama Mandatory Liability Insurance Act. Section 32-7A-4, Ala.Code 1975, states, in pertinent part:
"(a) No person shall operate, register, or maintain registration of, and no owner shall permit another person to operate, register, or maintain registration of, a motor vehicle designed to be used on a public highway unless the motor vehicle is covered by a liability insurance policy, motor vehicle liability bond, or deposit of cash."
Section 32-7A-2(13)a., Ala.Code 1975, defines an owner as "[a] person or persons holding the legal title to a motor vehicle." Therefore, if the husband holds title to the vehicle, he does have a legal obligation to maintain liability insurance on the vehicle. The judgment of the trial court is due to be reversed insofar as it does not require the husband to maintain insurance on the vehicle; on remand it should amend its order so that it is consistent with the Alabama Mandatory Liability Insurance Act.
The husband also argues that the trial court erred by ordering that he pay *443 three-fourths of the minor son's college expenses because, he says, the wife failed to present sufficient evidence of the costs of the son's attending Alabama A & M from which the trial court could have determined whether paying three-fourths of those costs would cause an undue financial hardship on the husband. At trial, on cross-examination by the husband's counsel, the wife testified concerning those costs as follows:
"Q. Now, do you know the costs of tuition, fees, books, room and board at Alabama A & M on a quarterly basis?
"A. On a quarterly?
"Q. I'm sorry. Semester, on a semester basis.
"A. I think it's three thousand and something per semester.
"THE COURT: I can't hear you.
"THE WITNESS: Three thousand something a semester, I think. I am not sure.
"Q. So at this point....
"A. I'm not sure."
The wife argues in her brief to this court that her testimony concerning the minor son's college expenses is consistent with her other testimony, based upon student loan documents presented into evidence by the husband, that the minor son's college expenses are $7,000 per year. However, a review of those documents show that they related to a student loan for the parties' eldest son, a senior at Alabama A & M, and that they do not represent the total of the costs to attend Alabama A & M, but only the amount the eldest son received in student loans for the 2001-2002 academic year.
This court has stated:
"This court has previously held that without legal evidence as to the amounts required for books and tuition or for actual costs of room and board, we cannot determine whether the sums a parent is required to pay for postminority educational support would cause undue hardship. [Penney v. Penney, 785 So.2d 376 (Ala.Civ.App.2000)]; Thrasher v. Wilburn, 574 So.2d 839 (Ala.Civ.App. 1990)....
"... In the absence of evidence regarding actual costs, neither this court nor the trial court can properly determine whether the portion of expenses the father was ordered to pay constitutes an undue hardship. Therefore, that part of the trial court's judgment awarding prospective postminority educational support is reversed. On remand, the parties may present evidence of the actual costs of the institution which the child plans to attend. This evidence would then allow the trial court to consider the father's claim of an undue hardship, based on concrete numbers."
Bowen v. Bowen, 817 So.2d 717, 718-19 (Ala.Civ.App.2001). Similarly, there are no "concrete numbers" in this record from which we can determine whether the portion of college expenses the trial court ordered the husband to pay would cause an undue hardship. Therefore, as we did in Bowen, we reverse the trial court's order as it relates to the payment of college expenses and remand the case so that the parties can present evidence of the actual costs of the minor son's attending Alabama A & M.
The appellee's request for an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON and PITTMAN, JJ., concur.
YATES, P.J., concurs specially.
*444 MURDOCK, J., concurs in part and concurs in the result in part.
CRAWLEY, J., concurs in the result.
YATES, Presiding Judge, concurring specially.
I write specially to note that a remand to allow a parent to present additional evidence of college expenses is not a second bite at the apple. The trial court shall consider all relevant factors that appear reasonable and necessary, including primarily the parents' financial resources and whether the child shows a commitment to and aptitude for the requested education. Ex parte Bayliss, 550 So.2d 986 (Ala.1989). A parent must seek postminority support for college expenses before the child reaches the age of majority.[2] We have had cases where a parent sought and the trial court awarded postminority support prematurely. See Murrah v. Turnipseed, 578 So.2d 1340 (Ala.Civ.App.1991)(award of college expenses for 16-year-old high school student was premature).
Unlike other petitions for support, petitions for postminority support are unique in that the timing of the filing of the petition is crucial. Therefore, there is a narrow window of time within which a parent must seek postminority support that, as a practical matter, may leave the petitioner at an unfair disadvantage at trial. Inherent within these petitions are a number of factors that could affect the parent's ability to provide the amount of college expenses within the time period the petition is filed and heard by the court. For example, availability of scholarships or grants may be unknown, as well as whether the child has been accepted to a particular institution. Unlike the case where a party is simply not prepared for trial, the peculiar circumstances surrounding the nature of postminority support warrant a remand for the presentation of actual costs.
MURDOCK, Judge, concurring in part and concurring in the result in part.
I concur in Part I of the per curiam opinion. I concur in the results reached by the remainder of that opinion, but write separately simply to comment briefly on the issue of the legal responsibilities of various parties to pay for automobile insurance. The responsibilities imposed by Ala.Code 1975, § 32-7A-4, are clear enough. I see nothing in that statute, however, that would prevent the trial court from making adjustments in the final judgment on remand to require one party to pay or to reimburse all or part of the expense incurred by the other party in fulfilling a legal obligation to maintain insurance on a vehicle the court ultimately orders to be made available for the child's use.
CRAWLEY, Judge, concurring in the result.
While, based on the current state of our caselaw, it is proper to remand this case to the trial court to allow the wife to present additional evidence of college expenses, I believe that this court should make a prospective ruling that petitioners should no longer be afforded the opportunity to submit sufficient evidence of college expenses on remand. This court has reversed judgments because the petitioner seeking postminority educational support, pursuant to Ex parte Bayliss, 550 So.2d 986 (Ala.1989), has not presented sufficient evidence to support an award of postminority educational *445 support. See, e.g., Smith v. Terry, 820 So.2d 839 (Ala.Civ.App.2001); Bowen, supra; Gordon v. Gordon, 804 So.2d 241 (Ala.Civ.App.2001); Penney v. Penney, 785 So.2d 376 (Ala.Civ.App.2000); Dennis v. Dennis, 777 So.2d 712 (Ala.Civ.App. 2000); Thompson v. Thompson, 689 So.2d 885 (Ala.Civ.App.1997); Meador v. Meador, 628 So.2d 907 (Ala.Civ.App.1993); Hocutt v. Hocutt, 591 So.2d 881 (Ala.Civ.App. 1991); Hooker v. Hooker, 593 So.2d 1023 (Ala.Civ.App.1991); Cannon v. Cannon, 585 So.2d 82 (Ala.Civ.App.1991); and Thrasher v. Wilburn, 574 So.2d 839 (Ala. Civ.App.1990).
Since Thrasher, supra, was decided more than 10 years ago, trial courts, as well as petitioners seeking postminority educational support under Bayliss, have been on notice that the reviewing court will require evidence as to the costs of the proposed college expenses in order to be able to review whether those costs are an undue hardship on the parent ordered to pay. I advocate that a petitioner should not be given "a second bite of the apple." That is, if a petitioner fails to present evidence of the costs involved, then the petitioner should not be allowed to present additional evidence on remand. Instead, the petitioner should be foreclosed from presenting additional evidence, and this court should render a judgment or the trial court's judgment should be reversed and the case remanded with instructions to enter a judgment adverse to the petitioner. See, e.g., Gus Mayer Co. v. Louisville & N.R. Co., 228 Ala. 290, 291, 153 So. 249, 250 (1934)("When the lower court tries a cause without a jury, if the judgment is not justified by the evidence, a final judgment may be rendered by the appellate court in accordance with the law and the evidence.") (citations omitted); and Gardner v. Ruffner, 206 Ala. 666, 91 So. 580 (1921) (on rehearing)(refusing to allow further testimony on remand for an issue clearly made by the pleadings).
In other types of civil cases, we do not allow a party who fails to present substantial evidence to overcome a judgment as a matter of law a second chance to present additional evidence to support the party's claim. See, e.g., G.UB.MK. Constructors v. Carson, 812 So.2d 1175 (Ala.2001); Arthur Rutenberg Homes, Inc. v. Norris, 804 So.2d 180 (Ala.2001); Thedford v. Payne, 813 So.2d 905 (Ala.Civ.App.2001); Tom Jones Insurance, Inc. v. Sinclair-Lawrence & Associates, Inc., 775 So.2d 211 (Ala.Civ.App.2000). The practice of reversing a judgment because of insufficient evidence and remanding for the taking of additional evidence rewards a party who failed to meet its burden of proof and punishes the other party, who was not at fault, by requiring the expenditure of time, effort and expense in conducting further evidentiary proceedings.
I advocate treating a Bayliss petition in the same manneri.e., no "second bite of the apple." It is not an unreasonable requirement that a petitioner in a postminority educational support case come to court with the required evidence of the costs involved in order to be eligible for the postminority educational support. The concerns raised in Presiding Judge Yates's special concurrence can be alleviated in a case where a petitioner does not have the proper evidence to go forward with his or her petition for postminority support when the hearing on the matter has been scheduled on the trial court's docket by the petitioner's seeking a continuance in order to allow the petitioner to gather needed evidence.[3] See McClendon Trucking Co. *446 v. Jones, 729 So.2d 349 (Ala.Civ.App. 1999)(the decision to grant or deny a motion for a continuance is within the sound discretion of the trial court); Lane v. Lane, 716 So.2d 1232 (Ala.Civ.App. 1998)(same). As noted in Presiding Judge Yates's special concurrence, it is the timing of the filing of the petition for postminority support that is crucial, not the timing of the hearing and presentation of evidence on the petition.
NOTES
[1] We note that the valuation of retirement benefits can be a difficult task that may require expert testimony from a certified public accountant or an actuary. See Joy M. Feinberg, Sizing Up the Pension Pot, 24 Fam. Advoc. 12 (Fall 2001).
[2] If the parents have made an agreement to pay for college expenses then that agreement is enforceable even if the child has reached the age of majority. See Procise v. Marler, 833 So.2d 650 (Ala. Civ.App.2002).
[3] In most cases, however, a petitioner would have the time necessary to gather the proper evidence to support his or her petition for postminority support. In this case, almost four months elapsed between the mother's filing of her petition seeking postminority support and the trial court's hearing on the matter.