THOMAS, Judge.
Maurice Underwood (“the husband”) and Rochella Benita Underwood (“the wife”) were married on January 3, 1981. On June 3, 2009, the husband filed a complaint seeking a divorce from the wife and a distribution of the assets and debts accumulated during the marriage. The wife answered the complaint and filed a counterclaim in which she asserted that she had been physically abused by the husband. After several continuances, a trial was held on April 14, 2011. On April 26, 2011, the circuit court entered its judgment divorcing the parties, dividing the parties’ real property and vehicles, awarding the wife periodic alimony, and awarding the wife percentages of the husband’s two retirement accounts. Specifically,
“[wjith respect to the husbands 2 pensions, the wife shall be awarded 25% of the Union 119 pension and 401k and retirement in Mobile, Alabama, if any. The wife shall be awarded 50% of the Union 72 retirement, pension, and 401k, in Atlanta, Georgia, if any. The wife’s attorney shall prepare the proper Qualified Domestic Relations Orders within 60 days to prepare same transfers and *1116 the husband shall cooperate in getting same paperwork signed and turned in, if necessary. The value to be divided shall be the value as of the date of this order and shall include any fluctuations in market prices and exclude any employee contributions made since this date.”
The husband filed a motion to alter, amend, or vacate the circuit court’s judgment. The husband contended that the wife had offered no evidence of the values of his retirement accounts, that the husband should have been awarded the marital residence “outright,” that the wife was not entitled to an award of periodic alimony, and that there was no evidence establishing the husband’s ability to pay alimony to the wife. He amended his postjudgment motion to contend that a 1979 F-100 truck should have been awarded to him. The wife responded, opposing the husband’s postjudgment motion and amended postjudgment motion. On July 21, 2011, the circuit court entered an order granting the husband’s postjudgment motion in part. The circuit court set aside the wife’s award of 25% of the husband’s Union 119 retirement account and set a hearing for October, 11, 2011, to receive evidence regarding the husband’s Union 119 retirement account. See Tice v. Tice, 100 So.3d 1071, 1074 (Ala.Civ.App.2012) (A judgment is nonfinal when all matters in controversy have not been completely adjudicated.).
At the hearing on October 11, 2011, the husband objected to the circuit court’s receiving additional evidence regarding his Union 119 retirement account. The circuit court then concluded that it lacked the ability to “reopen the case to hear additional evidence.” Instead, the circuit court, on October 20, 2011, modified its judgment, setting aside that portion of its judgment that had awarded the wife a percentage of the husband’s Union 119 retirement account and, “in light of [its] reconsideration,” ordering the husband to pay the wife $25,000 in alimony in gross to be paid in monthly installments of $875 for five years. All other portions of the circuit court’s April 26, 2011, judgment remained in effect.
The husband timely appealed to this court on November 15, 2011. He seeks this court’s review of (1) whether the circuit court erred in awarding the wife 50% of the husband’s Union 72 retirement account, (2) whether the circuit court erred by “substituting” an award of alimony in gross in its amended judgment, and (3) whether the circuit court’s property award and its award of periodic alimony is excessive and improper due to the husband’s alleged lack of ability to pay the amount ordered.
“In reviewing a trial court’s judgment in a divorce case where the trial court has made findings of fact based on oral testimony, we are governed by the ore tenus rule. Under this rule, the trial court’s judgment based on those findings will be presumed correct and will not be disturbed on appeal unless it is plainly and palpably wrong. Hartzell v. Hartzell, 623 So.2d 323 (Ala.Civ.App.1993). Matters of alimony and property division are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either of those issues. Willing v. Willing, 655 So.2d 1064 (Ala.Civ.App.1995). Furthermore, a division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court. Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996). In addition, the trial court can consider the conduct of the parties with regard to the *1117 breakdown of the marriage, even where the parties are divorced on the basis of incompatibility. Ex parte Drummond, 785 So.2d 358 (Ala.2000). Moreover, in Kluever v. Kluever, 656 So.2d 887 (Ala.Civ.App.1995), this court stated, ‘[a]l-though this court is not permitted to substitute its judgment for that of the trial court, this court is permitted to review and revise the trial court’s judgment upon an abuse of discretion.’ Id. at 889.”
Langley v. Langley, 895 So.2d 971, 973 (Ala.Civ.App.2003).
At the time of the trial, the husband and the wife had been married for 30 years. Their three children are adults. The husband testified that the parties had separated more than once and that they had not lived together since February 6, 2008. The husband and the wife admitted to having engaged in extramarital relationships. The husband testified that the wife lived with George Craig; however, the wife testified that she lived alone. She said that Craig had spent two nights at the marital residence in 2006 but that she had never had a sexual relationship with Craig. The husband offered into evidence exhibits intended to prove that Craig had lived in the marital residence and had had a sexual relationship with the wife. The exhibits include a Valentine’s day card that the husband characterized as a “love note” from Craig to the wife, the wife’s 2005 calendar with her handwritten notations of meetings with “G,” mail that had been delivered to Craig at the marital residence in 2007, and a document indicating that the Mobile District Court had attempted service upon Craig at the marital residence in 2008 in an unrelated lawsuit.
The wife admitted that in 1991 she had “paid somebody $50 to sign” the husband’s name on a mortgage-loan document on the marital residence and had used $16,000 in proceeds from the loan to “pay bills.” She also admitted to forging the husband’s signature on a loan for a boat in 1992. The boat was eventually repossessed by the sellers.
The husband said that, at the time of the hearing, he resided in the marital residence and the wife was renting an apartment. The circuit court heard testimony indicating that the marital residence was valued at between $50,000 and $60,800. The husband testified that the parties also owned two lots adjoining the marital residence. He valued one of the lots at $5,000; no one testified as to the value of the second lot. The husband valued a third lot (“the Mauvilla lot”) at $10,000.[1] The wife valued property on Donald Street at “25.”
It is undisputed that the wife was not employed at the time of the trial. The wife testified that she had been employed at Saad’s Healthcare, Inc. (“Saad’s”), for 15 years. She first testified that she did not have a retirement plan with Saad’s, but she later stated that she had had a 401K plan with Saad’s and that, in 2008, she had “cashed it” for $16,000, which, she said, she had used to pay bills.[2] She said she had been unemployed for four years before the trial due to her health problems.
The husband testified that the wife had suffered a stroke, had had a heart-bypass surgery, and had had a stent procedure. The wife added that she had been diag *1118 nosed with diabetes and high blood pressure and that she was slightly disabled by the stroke. The wife testified that she had qualified for Medicare benefits in March 2010 but that she owed $48,863 in unpaid medical bills that she had incurred before she qualified for Medicare. She said that she was unable to work and was receiving Social Security income in the amount of $948 per month. She testified that she collects rental income in the amount of $425 per month from a tenant renting the property on Donald Street; she said she pays $386 in homeowner’s insurance on that property.[3] She provided testimony as to her monthly expenses, and she requested an award of $600 per month in alimony; the husband agreed that the wife was entitled to alimony. In addition, the wife requested an award of certain items of personal property from the marital residence.
The husband testified that he was 54 years old and that he suffered from high blood pressure, for which he took prescription medication. He denied that he had physically abused the wife. He said that he had been employed as a construction worker for 25 years by Local 119 in Mobile and as a pipefitter for 10 years by Local 72 in Atlanta, Georgia. At the time of the trial, the husband had been employed as a millwright for four years at the Alabama State Docks in Mobile. He said he earned between $40,000 and $45,000 per year and had a net income of $2,600 per month. He said that he had two retirement accounts but that he was not currently eligible to draw any retirement benefits.
The parties offered vague testimony concerning the husband’s retirement accounts. According to a document offered into evidence by the wife, the husband’s status in the Local 119 retirement account is “Terminated Vested” and his account became active on March 1, 1975 — approximately six years before the marriage. The husband testified that he was not aware of the value of the Local 119 retirement account. He said: “I know about it. I have a retirement, but I don’t know how much.” It is undisputed that the parties had been married for a period of more than 10 years, during which the husband’s Local 72 retirement benefits were being accumulated. When asked for the “ballpark” value of his Local 72 retirement account, the husband answered: “$10,000 maybe.” The wife testified that she did not know the values of the husband’s Local 119 or Local 72 retirement accounts.
In its judgment, the circuit court awarded the husband the marital residence; however, it ordered the husband either to pay the wife $20,000 for her interest in the marital residence or to sell the house and pay the wife $20,000 from the proceeds of the sale.[4] It awarded the husband one of the lots adjacent to the marital residence,[5] the Mauvilla lot, a 1996 Ford Explorer sport-utility vehicle, the 1979 Park Avenue automobile, and the 2001 Mustang automobile. It awarded the wife $500 per month in periodic alimony, the property on Don- *1119 aid Street,[6] the 1979 Ford F-100 truck, and a 2002 Volvo automobile. It awarded the wife 50% of the husband’s Local 72 retirement account and 25% of the husband’s Local 119 retirement account, but in its modified judgment the circuit court set aside its award to the wife of 25% of the Local 119 retirement account because, it determined, insufficient evidence had been presented regarding the value of that account accumulated during the marriage. The circuit court added an award of $25,000 in alimony in gross to the wife because of its “reconsider[ation] of the other equities.”

I. The Retirement Accounts

Alabama Code 1975, § 30-2-51 (b) & (c), govern the treatment of retirement accounts for purposes of dividing property in divorce actions. Those subsections read:
“(b) The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed, provided that the following conditions are met:
“(1) The parties have been married for a period of 10 years during which the retirement was being accumulated.
“(2) The court shall not include in the estate the value of any retirement benefits acquired prior to the marriage including any interest or appreciation of the benefits.
“(3) The total amount of the retirement benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court.
“(c) If the court finds in its discretion that any of the covered spouse’s retirement benefits should be distributed to the non-covered spouse, the amount is not payable to the non-covered spouse until the covered spouse begins to receive his or her retirement benefits or reaches the age of 65 years, unless both parties agree to a lump sum settlement of the non-covered spouse’s benefits payable in one or more installments.”

A. The Husband’s Union 72 ■ Retirement Account

The husband contends that the circuit court’s judgment is due to reversed because it awarded the wife 50% of the husband’s Union 72 retirement account “in the total absence of proof of the present value of the benefits.” The husband cites Brattmiller v. Brattmiller, 975 So.2d 359 (Ala.Civ.App.2007); Wilson v. Wilson, 941 So.2d 967 (Ala.Civ.App.2005); Applegate v. Applegate, 863 So.2d 1123 (Ala.Civ.App.2003); and McAlpine v. McAlpine, 865 So.2d 438 (Ala.Civ.App.2002). In that line of cases, spouses had failed to produce sufficient evidence of the present value of the other spouse’s retirement benefits and this court consistently remanded the causes to the trial courts to amend their judgments. In Brattmiller this court explained:
“In Wilson v. Wilson, 941 So.2d 967 (Ala.Civ.App.2005); Applegate v. Applegate, 863 So.2d 1123 (Ala.Civ.App.2003); and McAlpine v. McAlpine, 865 So.2d 438, 440 (Ala.Civ.App.2002), this court held that, in order to support an award to one spouse of a portion of the other spouse’s retirement benefits pursuant to § 30-2-51(b), the spouse seeking such an award must introduce evidence establishing the ‘present value’ of the retirement benefits. Moreover, this court stated that ‘ “[t]he failure to present the *1120 necessary evidence of the present valuation of retirement benefits ... prevents the trial court from exercising its ... discretion to award one spouse any portion of the retirement benefits of the other spouse. McAlpine v. McAlpine, 865 So.2d 438 (Ala.Civ.App.2002).” ’ Wilson, 941 So.2d at 970 (quoting Applegate, 863 So.2d at 1124). Reversing the awards of retirement benefits in Wilson, Applegate, and McAlpine, this court remanded those cases with instructions for the pertinent trial courts to amend their judgments to eliminate the awards of retirement benefits and to reconsider divisions of marital assets on the basis of evidence that had already been introduced at trial.”
975 So.2d at 362-63.
In this case, the circuit court heard the husband’s testimony that the “ballpark” value of his Union 72 retirement account was $10,000 and that the husband and the wife had been married for a period of more than 10 years, during which the benefit was being accumulated. Therefore, the circuit court received some evidence of the value of the husband’s Union 72 retirement account, but, in Wilson, the evidence adduced at trial regarding the value of the husband’s retirement benefits was the husband’s own testimony, estimating his monthly retirement benefit. 941 So.2d at 970. This court, relying on Applegate and McAlpine, determined that a party’s estimate is insufficient evidence of the present value of a retirement benefit. Id. In this case, the only evidence presented to the circuit court as to the value of the husband’s Union 72 retirement account was the husband’s estimate. The wife failed to present evidence of the present value of the husband’s Union 72 retirement account; therefore, the circuit court lacked the discretion to award her any portion of the husband’s Union 72 retirement account. We reverse the circuit court’s award to the wife of 50% the Union 72 retirement account, and we instruct the circuit court to amend its judgment to eliminate the award of 50% of the Union 72 retirement account to the wife.

B. The Husband’s Union 119 Retirement Account/Alimony-in-Gross Award

The husband argues that the circuit court’s amended judgment improperly awarded the wife $25,000 in alimony in gross as a “substitute” for its original award of 25% of the husband’s Union 119 retirement account.
“An award of alimony in gross is intended to effect a final determination of property rights of the parties and to attempt to compensate the wife for the loss of inchoate property rights in her husband’s estate. Boley v. Boley, 589 So.2d 1297 (Ala.Civ.App.1991).”
Bunn v. Bunn, 628 So.2d 695, 697 (Ala.Civ.App.1993). The husband contends that the amended judgment should be reversed for two reasons. First, citing Murphy v. Murphy, 624 So.2d 620 (Ala.Civ.App.1993), he says that the “substituted” award of alimony in gross allowed the circuit court to do indirectly what caselaw prohibits it from doing directly. After a careful review of the record, we are unable to conclude the circuit court exceeded its discretion because, we determine, the circuit court properly attempted to balance the equities between the husband and the wife in its amended judgment.
In Murphy, a trial court awarded the husband’s retirement account, valued at $4,267, to the wife. 624 So.2d at 622. The husband filed a postjudgment motion, and, following a hearing, the trial court deleted that portion of its judgment and, instead, ordered the husband to pay the wife $20,000 in alimony in gross “ ‘paid at the *1121 rate of $500.00 per month beginning on the Husband’s 55th birthday.” ’ Id. (emphasis added). This court reversed the award of alimony in gross, stating:
“The trial court, on its own, determined that its initial disposition of the retirement funds was in error. We agree with that determination. It appears, however, that the amended disposition was an effort to indirectly do what the existing law prohibits. This court recognizes the heinous conduct of the husband. However, such conduct does not change the law of marital property. It is required that we reverse the trial court’s award of alimony in gross. Thompson v. Thompson, 532 So.2d 1027 (Ala.Civ.App.1988).”
Id. at 623. We determine that, although the postjudgment modification in Murphy is similar to the postjudgment modification in this case, it is distinguishable. The amended judgment in Murphy required the then 44-year-old husband to begin to pay the wife $500 per month 11 years after the judgment was entered — once he was eligible to draw “a reduced amount” of his retirement benefits. Id. at 622. In this case, the circuit court, like the trial court in Murphy, determined that its initial disposition of the husband’s Local 119 retirement account was in error, and we agree with its determination. However, in this case, it does not appear that the circuit court’s amended judgment was an attempt to circumvent the law of marital property regarding the allocation of retirement benefits. We conclude that the circuit court’s amended judgment, which awarded the wife $25,000 in alimony in gross, was its effort to balance the equities between the parties, rather than an effort to indirectly award the wife a portion of the husband’s Union 119 retirement benefits.
Second, the husband argues that the circuit court’s amended judgment is due to be reversed because the evidence indicates that his present estate is insufficient to pay an award of $25,000 in alimony in gross to the wife. The husband cites Ex parte Dickson, 29 So.3d 159 (Ala.2009); Redden v. Redden, 44 So.3d 508 (Ala.Civ.App.2009); and Zinnerman v. Zinnerman, 803 So.2d 569 (Ala.Civ.App.2001). In Dickson, our supreme court quoted from Redden and Zinnerman and determined that the trial court’s judgment that divided the parties’ property was erroneous because the amount of alimony in gross “greatly exceeded” the value of the husband’s estate at the time the judgment was entered. Dickson, 29 So.3d at 162. In Dickson, the court agreed with the husband that “an award of alimony in gross must be made based on the value of the marital estate and the parties’ separate estates and not on the anticipated future earnings of the payor.” Id. The trial court had calculated the husband’s current income and had considered his other financial circumstances. Id. The supreme court concluded that “the alimony-in-gross award made by the trial court substantially exceeded any value that could be drawn from the evidence regarding the husband’s estate at the time of the divorce.” Id. We express no opinion as to whether the alimony-in-gross award in this case exceeds the husband’s ability to pay. We have instructed the circuit court to eliminate its award of any percentage of the husband’s Union 72 retirement benefits to the wife and to reconsider its judgment regarding property division. Issues concerning property division, alimony in gross, and periodic alimony are all interrelated. See Newton v. Newton, 655 So.2d 1033, 1034 (Ala.Civ.App.1995). Therefore, we reverse the circuit court’s amended judgment awarding the wife $25,000 in alimony in gross and instruct the circuit court to reconsider its award of alimony in gross.

*1122
II. The Award, of Periodic Alimony

The husband contends that the award of $500 in periodic alimony is excessive and improper for two reasons: (1) because the circuit court failed to consider the wife’s alleged misconduct in its determination of periodic alimony and (2) because it failed to consider his ability to pay the amount of support awarded. We express no opinion whether the circuit court exceeded its discretion in its award of periodic alimony; however, as we said above, the issues concerning property division, alimony in gross, and periodic alimony are all interrelated; thus, because the circuit court is instructed to reconsider its property division and its award of alimony in gross, we reverse the circuit court’s award of $500 in periodic alimony and instruct the circuit court to reconsider its award of periodic alimony. See Newton, 655 So.2d at 1034.

III. Conclusion

We reverse the circuit court’s judgment insofar as it awarded the wife a portion of the husband’s Union 72 retirement benefits, and we remand the cause with instructions to amend the judgment to eliminate that award. See Brattmiller, Wilson, Ap-plegate, and McAlpine. Additionally, we reverse the circuit court’s judgment insofar as it awarded the wife $25,000 in alimony in gross. On remand, the circuit court is instructed to reconsider its division of the marital assets in light of its determination that it cannot award any portion of the husband’s Union 119 retirement benefits and our determination that it cannot award the wife any portion of the husband’s Union 72 retirement benefits. See Newton. Furthermore, we reverse the circuit court’s award of periodic alimony so that, on remand, it can reconsider its award of periodic alimony in conjunction with its reconsideration of its division of the marital assets. See Newton.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.

. The wife’s exhibit E is a Mobile County Revenue Commission tax notice that lists the value of the Mauvilla lot at $8,500.

. There was further testimony concerning the wife’s finances between 1991 and 1996, including proceeds from two settlement agreements that may have amounted to $26,000 and an inheritance of $13,000. The wife testified that she had filed for bankruptcy in either 1994 or 1995.

. The wife did not indicate whether she paid the $386 homeowner’s insurance obligation monthly or annually.

. The parties agreed that the mortgage on the marital residence and the two adjoining vacant lots had been paid in full in 2004.

. The circuit court’s judgement awarded the husband "the lot at-Haig Street," which is one lot adjoining the marital residence; however, the husband testified that he owns two adjoining lots. The wife has not appealed to this court, and we note that, when a judgment fails to dispose of certain property, the ownership of the property is not altered. “When the trial judge d[oes] not alter ownership, that, in and of itself, dispose[s] of the issue.” Coffelt v. Coffelt, 390 So.2d 652, 653 (Ala.Civ.App.1980).

. The wife said that the loan on the property on Donald Street had been paid in full.