PER CURIAM.
Elizabeth Martin Holland ("the wife") and Ronald Gordon Holland ("the husband") were married in 1976. They separated in 2008, and, on December 22, 2014, the husband filed a complaint in the Shelby Circuit Court seeking a divorce from the wife and a division of the marital assets and debts. The wife filed a counterclaim seeking a divorce from the husband, a division of the marital assets and debts, an award of alimony, and an award of attorney fees.
After hearing ore tenus testimony, the circuit court entered a judgment divorcing the parties. It made the wife responsible for any debt in her name and awarded her the marital residence, all personal property contained in the marital residence, an automobile, the funds in her banking accounts, and certain insurance proceeds. The circuit court made the husband responsible for any debt in his name and awarded him certain real property ("the Eva property"); four firearms; his interest in his business, Southern Environmental Air, Inc. ("SEA"); several items of equipment and heavy machinery used by SEA; certain investment accounts; and the funds in his banking accounts. It ordered the husband to pay the wife $115,000 in alimony in gross and to pay $3,000 toward her attorney fees.
The parties each filed postjudgment motions, and, after a hearing, the circuit court entered an order opening the judgment to take additional testimony regarding a certain alleged marital asset. Rule 59(a), Ala. R. Civ. P., provides, in pertinent part:
"A new trial may be granted to all or any of the parties ... on all or part of the issues in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of Alabama. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment."
The husband filed motion to which he attached an excerpt from his deposition, which, according to him, eliminated any issue regarding the alleged marital asset. The circuit court entered an order ("the May 18, 2016, order"), which reduced the husband's alimony-in-gross obligation to $66,000 and set a hearing regarding "the *1084 remaining issues." That hearing did not occur.
The circuit court later rendered orders on the parties' postjudgment motions that were entered on June 28, 2016. The circuit court denied the wife's motion in its entirety and denied the husband's motion except insofar as it had amended the amount of alimony in gross in the May 18, 2016, order. Therefore, on June 28, 2016, the divorce judgment became a final judgment.
The wife filed a timely notice of appeal seeking this court's review of whether the circuit court had abused its discretion by not awarding her an interest in SEA, by not awarding her periodic alimony, and by not reserving the right to award periodic alimony in the future.
" 'In reviewing a trial court's judgment in a divorce case where the trial court has made findings of fact based on oral testimony, we are governed by the ore tenus rule. Under this rule, the trial court's judgment based on those findings will be presumed correct and will not be disturbed on appeal unless it is plainly and palpably wrong. Hartzell v. Hartzell, 623 So.2d 323 (Ala. Civ. App. 1993). Matters of alimony and property division are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either of those issues. Willing v. Willing, 655 So.2d 1064 (Ala. Civ. App. 1995). Furthermore, a division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court. Golden v. Golden, 681 So.2d 605 (Ala. Civ. App. 1996). In addition, the trial court can consider the conduct of the parties with regard to the breakdown of the marriage, even where the parties are divorced on the basis of incompatibility. Ex parte Drummond, 785 So.2d 358 (Ala. 2000). Moreover, in Kluever v. Kluever, 656 So.2d 887 (Ala. Civ. App. 1995), this court stated, "[a]lthough this court is not permitted to substitute its judgment for that of the trial court, this court is permitted to review and revise the trial court's judgment upon an abuse of discretion." Id. at 889.'
" Langley v. Langley, 895 So.2d 971, 973 (Ala. Civ. App. 2003)."
Underwood v. Underwood, 100 So.3d 1115, 1116-17 (Ala. Civ. App. 2012).
At the time of the trial, the parties had been married for 39 years and were each 64 years old. The wife is a retired teacher. The husband is an electrical engineer. The husband testified that he had been employed by the Alabama Power Company in the early years of the marriage and that, by 1989, he and the wife were no longer intimate. The wife testified that, around that time, the husband lived in a camper, and she participated in counseling for victims of domestic abuse. However, according to the husband, the parties had continued to live together at times, but had "separated" their finances, although, he stated, he had paid "pretty much all the household bills" including the mortgage on the marital residence, which they had purchased in 1991.[1] The husband testified that, in 1991, he began operating SEA out of the marital residence as an air-pollution-control business. The wife agreed that the husband had paid her living expenses, but she testified that they had separate banking *1085 accounts because she wanted to be financially independent of the husband; he testified that they had separate banking accounts because she overspent.
In 2008 the wife fell and seriously injured herself; thus, she retired from her employment as a teacher and qualified for Social Security disability benefits. The husband said that the marital residence had stairs and that he thought that the wife needed to live in a single-story residence. A deed contained in the record demonstrates that, in 2008, the parties acquired the Eva property, which is a remote 80-acre parcel upon which the husband built the SEA office building. The parties disputed whether the wife had knowledge of the purchase of the Eva property before 2011. However, the wife admitted that she had known that the husband had looked at several parcels and that he had wanted to build an underground residence or a residence with a basement large enough to store, she said, "Armageddon amounts of food" and firearms for protection from marauding bands of people. The wife said: "I would call him a doomsday prepper." The husband testified that, after the purchase of the Eva property, he sometimes lived in an apartment attached to the SEA office building. He said that, after first agreeing to move to the Eva property, the wife had later refused to do so. The wife disputed his testimony and testified that she had would never have agreed to move to a remote location with the husband because she was afraid that he might abuse her and because she is afraid of tornados and enjoys being involved in her community.
The husband said that he was "growing old" and that he had neck, back, knee, shoulder, and prostate issues; severe tendinitis ; sleep apnea ; and scoliosis. The wife testified that she took medication to treat fibromyalgia and dysautonomia and that she suffered from vertigo and from stomach, bladder, and thyroid issues.
The husband requested that the circuit court award the wife the marital residence, its contents, and an automobile. He said that the marital residence was worth at least $260,000 and that its contents were worth approximately $7,000. An exhibit entered into evidence indicates that the automobile the circuit court awarded to the wife was owned by SEA and is worth $5,561.
The husband requested that the circuit court award him the Eva property. He testified that the parties had purchased it for $199,000. He said that SEA contributed $145,000 of the purchase price and that SEA provided at least $100,000 for certain improvements. He said that the Eva property was worth at least $300,000; an appraisal entered into evidence indicates that the Eva property is worth $350,000. The husband also requested an award of his interest in SEA and all its equipment, which he valued at approximately $50,000 (including the $5,561 automobile that was awarded to the wife). The husband offered a copy of a balance sheet into evidence indicating that, among other things, as of December 31, 2014, SEA had several liabilities including accounts payable in the amount of $154,605.22 and a "long term liability" of $186,873 denoted as "note payable to owner." On cross-examination, the husband testified that, at the time of his deposition, he had been unable to answer whether the accounts-payable liability had been paid, but he testified that it had been paid at the time of the trial. He said that SEA had recognized revenue from its accounts receivable in 2015 and that it had used those proceeds to satisfy the $154,605.22 accounts-payable liability. The husband was also questioned about the note payable to owner, and he said that there had been no such loan. The wife *1086 offered an exhibit indicating that SEA had had a gross annual income of $916,027 in 2008, $816,855 in 2009, $718,509 in 2010, $642,507 in 2011, $389,204 in 2012, $382,307 in 2013, and $665,560 in 2014. The husband did not dispute those amounts; however, he offered exhibits, created by his accountant, detailing SEA's 2015 and 2016 profits and losses. According to his exhibits, in 2015 SEA had gross income of $650,212, and, after deducting its expenses, its 2015 net income was $338; in the first two months of 2016, SEA had a gross income of $49,443, and, after deducting its expenses, its then current net income was $12,648.
The husband valued his firearms at $1,860, and, regarding the investment accounts, the husband testified that the parties had certain stocks and annuities valued at approximately $4,500. The wife testified that she had $9,500 in her banking accounts; the husband testified that he had $2,000 in his banking accounts.
The husband insisted that he had never earned a salary from SEA of more than $30,000 per year. He offered a copy of his current W-2 tax form into evidence demonstrating that he would be required to report a gross annual income of $21,666 on his next income-tax return. He said that his net monthly income was $1,412 and that his monthly living expenses were $1,370. The husband also testified that he earned less income than the wife. The circuit court admitted an income-comparison document into evidence that supported the husband's testimony and that was based upon the adjusted gross incomes reported on the parties' separately filed 2012, 2013, and 2014 income-tax returns.
The wife offered an exhibit indicating that she received an annual Social Security disability benefit of $18,646.80 and annual retirement income of $19,281.96, which demonstrated a monthly income of $3,160.73. She estimated that her monthly living expenses were $3,850 and requested "either sufficient assets to help [her] bridge the amount of money [she] earn[ed] and what it costs [her] to live each month or ... [an] award [of] alimony, either one." The wife said: "I would prefer a dollar amount rather than alimony, but I would take alimony."
On appeal the wife argues that the circuit court's property award is inequitable because, she says, the circuit court should have awarded her an interest in SEA. The value of nearly all the marital assets-including the value of SEA-was disputed. The ore tenus presumption applies to " ' "disputed issues of fact," whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence.' " Friedman v. Friedman, 971 So.2d 23, 28 (Ala. 2007) (quoting Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala. 2000), quoting in turn Born v. Clark, 662 So.2d 669, 672 (Ala. 1995) ). The circuit court was in the best position to resolve the disputed issue of the value of SEA. The husband offered testimony and documentary evidence that, if believed, demonstrated that any ownership interest in SEA would confer a relatively small annual income despite SEA's larger annual gross income. Therefore, we are unable to find support for the wife's contention that a failure to award her an interest in SEA renders the circuit court's property division plainly or palpably wrong.
Moreover, the circuit court awarded the wife at least $282,061 in marital assets: a $260,000 residence, $16,500 in personal property and cash, and a $5,561 automobile. The circuit court awarded the husband, at most, approximately $403,000 in marital assets: $350,000 in real property and approximately $53,000 in personal *1087 property and cash.[2] Thus, after ordering the husband to pay the wife $66,000 in alimony in gross, the property division favored the husband by, at most, approximately $55,000. If, however, the circuit court believed the husband's testimony regarding the value of the Eva property, then the property division is nearly equal.
"This court cannot hold that the trial court's award of alimony and the division of marital property was plainly or palpably wrong, because there was evidence in the record from which the trial court could have reasonably determined that the alimony and division of marital property was equitable under the circumstances of this case. Carter [v. Carter, 934 So.2d 406 (Ala. Civ. App. 2005) ]; Wells [v. Wells, 428 So.2d 88 (Ala. Civ. App. 1983) ]. It is well settled that a trial court is afforded a wide degree of discretion in dividing marital assets in a divorce proceeding; the only limitation is that the division of property must be equitable under the circumstances of the particular case. Further, it is the trial court that determines what is equitable. TenEyck [v. TenEyck, 885 So.2d 146 (Ala. Civ. App. 2003) ](citing Cantrell v. Cantrell, 773 So.2d 487, 489 (Ala. Civ. App. 2000), and Ross v. Ross, 447 So.2d 812, 813 (Ala. Civ. App. 1984) )."
Clements v. Clements, 990 So.2d 383, 392-93 (Ala. Civ. App. 2007). The wife has failed to demonstrate reversible error regarding the equity of the division of the marital assets.
Next, the wife argues that the circuit court should have awarded her periodic alimony.
"The purpose of periodic alimony is to support the former dependent spouse and to enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until the spouse is self-supporting or maintaining a status similar to the one enjoyed during the marriage."
O'Neal v. O'Neal, 678 So.2d 161, 165 (Ala. Civ. App. 1996). In this case, the wife failed to demonstrate that the husband had the ability to pay alimony. A trial court should ordinarily use a spouse's net income as the starting point to determine a spouse's ability to pay alimony. See Ex parte Jackson, 567 So.2d 867, 868 (Ala. 1990). The testimony and documentary evidence demonstrated that the husband earned less income than the wife and that his monthly expenses were nearly equal to his net monthly income. Furthermore, the wife requested either an award of alimony in gross or an award of periodic alimony, and she said that she preferred an award of alimony in gross. We cannot assign error to the circuit court for awarding the wife the relief that she requested.
Finally, the wife argues that the circuit court should have reserved the right to order the husband to pay periodic alimony in the future. The wife argues:
"At trial, the Wife requested that the Court either award her a lump sum monetary award or alimony to 'bridge the gap' between her income and her expected expenses. Given the length of the parties' marriage, the lifestyle enjoyed by the parties during the marriage and the Wife's inability to earn more than her state retirement income and her Social Security Disability, coupled with Husband's value in his business, it was error for the trial court to fail to award alimony and/or to reserve the *1088 right to award periodic alimony at a later date if the circumstances should justify it."
In Crenshaw v. Crenshaw, 816 So.2d 1046, 1048 (Ala. Civ. App. 2001), we explained that "the trial court's decision to reserve alimony is, for all intents and purposes, a denial of alimony at the time of the original divorce" and that "the trial court should reserve the issue of alimony if the facts indicate that future circumstances may entitle a party to an award of alimony." The wife has directed us neither to legal authority in support of her claim that the circuit court should have reserved that issue, nor to facts that would indicate that future circumstances might entitle her to an award of alimony. Rule 28(a)(10), Ala. R. App. P., requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived. White Sands Grp., L.L.C. v. PRS II, L.L.C., 998 So.2d 1042, 1058 (Ala. 2008).
Moreover, although the wife asked for an award alimony at the time of the divorce, she failed to ask the circuit court to reserve the power to award alimony in the future either before the judgment was entered or, as the husband points out, in a postjudgment motion. " '[I]t is a well-settled rule that an appellate court's review is limited to only those issues that were raised before the trial court.' " Neal v. Neal, 856 So.2d 766, 778 (Ala. 2002), quoting Beavers v. County of Walker, 645 So.2d 1365, 1372 (Ala. 1994) ); see also Green v. Taylor, 437 So.2d 1259, 1260 (Ala. 1983) ("[T]he general rules regarding the necessity for post-trial motions is that, ordinarily, issues not raised before the trial court may not be raised for the first time on appeal."). Whether to award alimony now or to reserve the issue for a later determination based on "future circumstances" are different legal questions. See Ex parte Knox, 201 So.3d 1213 (Ala. 2015) (explaining that, although additional arguments and reasoning may be presented on appeal regarding issues properly presented to the trial court, a different or new legal question may not be raised for the first time on appeal).
The wife has not demonstrated that the circuit court abused its discretion by not awarding her an interest in SEA, by not awarding her periodic alimony, or by not reserving the right to award periodic alimony in the future. Therefore, the circuit court's judgment is affirmed. The husband's request for an award of attorney fees on appeal is denied.
AFFIRMED.
Thompson, P.J., and Pittman, Thomas, Moore, and Donaldson, JJ., concur.

Undisputed testimony indicates that a mortgage on the marital residence had been paid off at the time of the trial.

We added the estimated values of the investment accounts ($4,500), the husband's banking accounts ($2,000), the husband's firearms ($1,860), and the SEA equipment ($50,000). We subtracted the value of the automobile ($5,561) that the circuit court awarded to the wife.